**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAMES BONINI
CLERK

2011 FEB -9  A 10: 51

U.S. DISTRICT COURT

Craig Michael, Kirk
             Plaintiff

CASE NO.  2:09-cv-583

Vs.

Honorable Judge James L. Gram

Muskingum County Ohio *et al.*

Magistrate Elisabeth Preston Deavers

             Defendants

## PLAINTIFFS OPPOSITION AND OBJECTION TO DEFEDANTS SHILLING'S POLICE REPORT AND MOTION FOR SUMMARY JUDGEMENT!

That the Plaintiff Craig Michael, Kirk seeks an order moving this Honorable Court, for

sustaining plaintiffs objections against Defendant Shillings Motion for summary judgment, under

28 U.S.C. § 1746, FRCP 56 (2) (3) (4)  Local rule 10.1 (a)or in the alternative Judgment on all

plaintiffs, claims set forth with following Exhibits attached incorporated and in supported at all

times herein. See Sixth Circuit's decision in **UNITED STATES COURT OF APPEALS FOR**

**THE SIXTH CIRCUIT Victoria Harris v. J.B. Robinson Jewelers**  and Celotex Corp v.

**Catrett, 477 U.S. 317, 322 (1986).**

Plaintiffs further supports this ''whole'' motion in opposition and objections against

defendants Frazeysburg and defendant Shilling summary judgment interests of justice for

reasons set forth and in support of this Motion by accompanying Memorandum of Law, and

Declaration attached, and incorporated hereto as fact with exhibits in support at all times herein.

**Doc No. 2 Fact N.1-257**

Respectfully Submitted,

PO BOX 206 Warsaw, Ohio 43844
craigslaw@frontier.com
Phone 740 824-4850

1

## Memorandum of Law

### May It Please the Court?

### Please see Plaintiff's exhibits# 1, 1-2, 2, 2-2, 2-3, 3 Declaration

Plaintiff filed his civil rights case **See Doc No 2** under congressional created hybrid tort law title 42 sec 1983 for such a case just like this. Plaintiff is offering to the court in the interest of judicial economy strongly considering dismissing all defendants out even though Plaintiff believes in his heart of hearts his rights had been violated in the underline case **Defendants Frazeysburg and or Defendant shilling or both defendants in work concert have in this instance before the court violated the Dirty Hands Doctrine** .

Nevertheless, plaintiff fired up again restates to the court, if Defendant Shilling made the good faith traffic stop which he claims, plaintiff would concede to the power of the state and sit at the back of the bus.  However this is not the case, and a good faith stop ''has'' **Never existed in the under line action**.  Plaintiff asseverates to the court under pains and penalties and to the best of his knowledge and understanding belief ability, Defendant Shilling was not at the bank in the underline case, or at the exact time in which defendant Shilling claims in this case it is true is it not. **See Doc No 70 Doc 90.**

> **The Motion for Judgment on the Pleadings of Defendants Cliff Bigler, Jay Schilling, & the Village of Frazeysburg (Doc. 63) is GRANTED in part and DENIED in part. Plaintiff's claims against Defendant Bigler are DISMISSED with prejudice.  Plaintiff's excessive force and unreasonable search claims against Defendants Schilling and the Village of Frazeysburg remain, while the rest of Plaintiff's claims against these Defendants are DISMISSED with prejudice**

Both plaintiff and defendant ''**KNOW**'' without a doubt which direction he came from.

Defendant Shilling by **Stealth, Surprise, [Fed Evidence Rules]** and shock See **Brady v. Maryland, 373 U.S. 83 (1963).  Federal Evidence Rule 201.  See Doc No. 2 Fact Number**

**110-257 http://www.opd.ohio.gov/Rule16Reform/Rule16** where Plaintiff objects to the

defendant's police report for violations of Federal Rules of Evidence **Rule 301**. Fed.R.Evid.

1002; **Ridgway v. Ford Dealer Computer Services, Inc., 114 F.3d 94 (6th Cir.**

**1997)** against the plaintiff civil procedures rights.

Defendant Shilling is offering to the court ''**NOW**'' a **Dirty Hands police report**

wholly, brand new altered, redacted, forged fabricated evidence but yet a defective in form and

substance police report.  Moreover, Defendant Shilling greatly transfers a truckload more

standing, to the plaintiff- but at the same time prejudice plaintiff outside the discovery cut off

date. **Plaintiff with vigor under the Mosaic Law and Maximums of law says if he can just**

**get the defendant on the stand in a trial by court for issues of law,** plaintiff can prove to the

court but yet defeat defandant shilling taking candy from a baby and drive a truck through both

police reports illustrating the bad faith stop to the court.  Plaintiff salivating, for an opportunity to

build the foundation and cross several years now can easily prove to the court these claims even

if it puts plaintiff in danger for any reason unknown to the plaintiff he needs to make the record

at all cost.

The fact defendant Shilling was not at the Bank in the village police cruiser as he claims,

is so in fact like the moon or Sabbaths in plaintiffs mind its an unshakable fact. It is a solid

simple straight forward fact, which will so withstand any challenge under cross from the

defendant. With respect the Defendant, his Attorney and the court plaintiff would have never

filed his complaint if this were not the case for the law of God forbids false statement on the

Mosaic seat.

Plaintiff offers to the court, it is true is it not, for the **BOTH defendant's** failed to offer

facts to it's Attorney for proper representation where Plaintiff has not told the secret yet which

3

will be illustrated at pretrial or trial on foundation cross.  Plaintiff apologizes to the court if this offends the court it is the best way plaintiff knows to prove his case at this time without undermining his examination strategy setting up the defendant for complete utter failure based on the pleading law and facts.

Plaintiff asseverates to the court does this leave questions a big door closed for the ''**defendant**'' **for he** never asked or moved for any discovery depositions, admissions, or interrogatories. **<u>Plaintiff In theory, asserts shifting the burden maybe this would open the door to plaintiffs claim in part or in wholly proving the bad faith stop causing so much damage to all parties and wasting the courts valuable time.</u>**

Plaintiff also offers to the court for consideration the ideal that this brand new police report strongly offers or points to **BOTH defendants in concert and shilling,** once again may have indeed violated the federal state privacy laws, entering Ohio databases without probable cause, on any level.

Nevertheless, plaintiff offers to the court maybe he used defendant Frazeysburg database a open question for the court to hear and or software to fabricate rewrite the police report which violates the dead line for discovery in this case, but may be in-fact unknown or seen to both defendants in the underline case set the stage for other ligation.

Plaintiff offers to the court in fact it appears, Defendants Frazeysburg and Defendant Shilling unknowing opened the door on this theory working in concert trying to undermining the plaintiff creating in-justice for all. Notice Plaintiff practices of the **Mosaic Law Exodus 23;20** and for any reason defendants defiling the greatness of our federal Courts in which after Christ's death God himself placed the men and women in the Solomon seat shall not go unnoticed for the court is the savior of this great Nation by divine right. This issues which plaintiff brings before

4

the courts for consideration should be a standing and or leading factor by objection against defendant motion for summary judgment.

Plaintiff believes this may be a misprision of a felony for which the court to decide in plaintiffs objection. The defendant knowingly opened the door with his motion for summary judgment and fabricated police report representing the possibility of the statues of limitations reinstated for the benefit of other areas of litigation and challenges for Craig and Jeanette Kirk *et al settle the case.*

### The Reid Institute - Established in 1999
**An innocent person who is told that the investigation clearly indicates that he is guilty of a crime he knows he did not commit (regardless of the alleged evidence presented) will certainly not place more weight in the investigator's demeanor or purported evidence than his own knowledge of his innocence.**
*MAKE A SETTLEMENT OFFER!!!!*

### (b) Representations to the Court.

By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances;

**(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non frivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.**

### TITLE 28 App. > FEDERAL > TITLE > Rule 11

NOTES: Source (As amended Apr. 28, 1983, eff. Aug. 1, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007.) Notes of Advisory Committee on Rules—1937

This is substantially the content of [former] Equity Rules **24** (Signature of Counsel) and 21 (Scandal and Impertinence) consolidated and unified. Compare [former] Equity Rule **36** (Officers before Whom Pleadings Verified). Compare to similar purposes, English Rules Under the Judicature Act (The Annual Practice, 1937) O. 19, r. 4, and Great Australian Gold Mining Co. v. Martin, L. R., 5 Ch.Div. 1, 10 (1877). Subscription of pleadings is required in many codes. 2 Minn.Stat. (Mason, 1927) § 9265; N.Y.R.C.P. (1937) Rule 91; 2 N.D.Comp.Laws Ann. (1913) § 7455. This rule expressly continues any statute, which requires a pleading to be verified or accompanied by an affidavit, such as:  **U.S.C., Title 28:  § 381** [former] (Preliminary injunctions and temporary restraining orders)  **§ 762**

**For abolition of the rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances, see Pa.Stat.Ann. (Purdon, 1931) see 12 P.S.Pa., § 1222; for the rule in equity itself, see Greenfield v. Blumenthal, 69 F.2d 294 (C.C.A. 3d, 1934).**

## Notes of Advisory Committee on Rules—1983 Amendment Since its original promulgation,

Rule **11** has provided for the striking of pleadings and the imposition of disciplinary sanctions to check abuses in the signing of pleadings. Its provisions have always applied to motions and other papers by virtue of incorporation by reference in Rule **7 (b)(2)**. The amendment and the addition of Rule **7 (b)(3)** expressly confirms this applicability.

**Experience shows that in practice Rule 11 has not been effective in deterring abuses. See 6 Wright & Miller, Federal Practice and Procedure: Civil § 1334 (1971). There has been considerable confusion as to (1) the circumstances that should trigger striking a pleading or motion or taking disciplinary action, (2) the standard of conduct expected of attorneys who sign pleadings and motions, and (3) the range of available and appropriate sanctions. See Rodes, Ripple & Mooney, Sanctions Imposable for Violations of the Federal Rules of Civil Procedure 64–65, Federal Judicial Center (1981).**

The new language is intended to reduce the reluctance of courts to impose sanctions, see **Moore, Federal Practice  7.05, at 1547,** by emphasizing the responsibilities of the attorney and reinforcing those obligations by the imposition of sanctions.  The amended rule attempts to deal

with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. *See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, (1980); Hall v. Cole, 412 U.S. 1, 5 (1973).*

Greater attention by the district courts to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.  The expanded nature of the lawyer's certification in the fifth sentence of amended Rule *11* recognizes that the litigation process may be abused for purposes other than delay. See, e.g., Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078 (2d Cir. 1977).

The words "good ground to support" the pleading in the original rule were interpreted to have both factual and legal elements. *See, e.g., Heart Disease Research Foundation v. General Motors Corp., 15 Fed.R.Serv. 2d 1517, 1519 (S.D.N.Y. 1972).*

They have been replaced by a standard of conduct that is more focused.  The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n, 365 F.Supp. 975 (E.D.Pa. 1973).*

This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation. See *Nemeroff v. Abelson, 620 F.2d 339 (2d Cir. 1980). The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.* The court is expected to avoid

using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar. The rule does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion, or other paper is substantially justified. The provisions of Rule *26 (c)*, including appropriate orders after in camera inspection by the court, remain available to protect a party claiming privilege or work product protection.

*Amended Rule 11 continues to apply to anyone who signs a pleading, motion, or other paper. Although the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in pro se situations. See Haines v. Kerner 404 U.S. 519 (1972).* The provision in the original rule for striking pleadings and motions as sham and false has been deleted. The passage has rarely been utilized, and decisions thereunder have tended to confuse the issue of attorney honesty with the merits of the action. *See generally Risinger, Honesty in Pleading and its Enforcement:* Some "Striking" Problems with Fed. R. Civ. P. 11, *61 Minn.L.Rev. 1 (1976).*

Motions under this provision generally present issues better dealt with under Rules 8, 12, or 56. See *Murchison v. Kirby, 27 F.R.D. 14 (S.D.N.Y. 1961);* 5 *Wright & Miller, Federal Practice and Procedure: Civil § 1334 (1969).* The former reference to the inclusion of

scandalous or indecent matter, which is itself strong indication that an improper purpose underlies the pleading, motion, or other paper, also has been deleted as unnecessary.

Such matter may be stricken under Rule **12 (f)** as well as dealt with under the more general language of amended Rule **11.** The text of the amended rule seeks to dispel apprehensions that efforts to obtain enforcement will be fruitless by insuring that the rule will be applied when properly invoked. The word "sanctions" in the caption, for example, stresses a deterrent orientation in dealing with improper pleadings, motions or other papers. This corresponds to the approach in imposing sanctions for discovery abuses. _**See National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639 (1976) (per curiam).**_

And the words "shall impose" in the last sentence focus the court's attention on the need to impose sanctions for pleading and motion abuses. The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted. The reference in the former text to willfulness as a prerequisite to disciplinary action has been deleted. However, in considering the nature and severity of the sanctions to be imposed, the court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed. _**Thus, for example, when a party is not represented by counsel, the absence of legal advice is an appropriate factor to be considered.**_

_**Courts currently appear to believe they may impose sanctions on their own motion.**_ See **North American Trading Corp. v. Zale Corp., 73 F.R.D. 293 (S.D.N.Y. 1979).** Authority to do so has been made explicit in order to overcome the traditional reluctance of courts to intervene unless requested by one of the parties. The detection and punishment of a violation of

9

the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation.

If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both, or on an unrepresented party who signed the pleading, and the new rule so provides. Although Rule 11 has been silent on the point, courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique. See 5 Wright & Miller, Federal Practice and Procedure: Civil § 1334 (1969); 2A Moore, Federal Practice  11.02, at 2104 n.8. This power has been used infrequently. The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney.

***Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client. See Browning Debenture Holders' Committee v. DASA Corp., supra. This modification brings Rule 11 in line with practice under Rule 37, which allows sanctions for abuses during discovery to be imposed upon the party, the attorney, or both.***
A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under **Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.** The procedure obviously must comport with due process requirements. The particular format to be followed should depend on the circumstances of the situation and the severity of the sanction under consideration. In many situations, the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary. To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must

to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances. Although the encompassing reference to "other papers" in new Rule 11 literally includes discovery papers, the certification requirement in that context is governed by proposed new Rule 26 (g). Discovery motions, however, fall within the ambit of Rule 11.

### Notes of Advisory Committee on Rules—1987 Amendment

The amendments are technical. No substantive change is intended. Notes of Advisory Committee on Rules—1993 Amendment Purpose of revision. This revision is intended to remedy problems that have arisen in the interpretation and application of the 1983 revision of the rule. For empirical examination of experience under the 1983 rule, see, e.g., New York State Bar Committee on Federal Courts, Sanctions and Attorneys' Fees (1987); T. Willging, The Rule 11 Sanctioning Process (1989); American Judicature Society, Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11 (S. Burbank ed., 1989); E. Wiggins, T. Willging, and D. Stienstra, Report on Rule 11 (Federal Judicial Center 1991). For book-length analyses of the case law, see G. Joseph, Sanctions: The Federal Law of Litigation Abuse (1989); J. Solovy, The Federal Law of Sanctions (1991); G. Vairo, Rule 11 Sanctions: Case Law Perspectives and Preventive Measures (1991).  The rule retains the principle that attorneys and pro se litigants have an obligation to the court to refrain from conduct that frustrates the aims of Rule 1. The revision broadens the scope of this obligation, but places greater constraints on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court. New subdivision (d) removes from the ambit of this rule all discovery requests, responses, objections, and motions subject to the provisions of Rule 26 through 37.  Subdivision (a). Retained in this subdivision are the provisions requiring signatures on pleadings, written motions, and other

papers. Unsigned papers are to be received by the Clerk, but then are to be stricken if the omission of the signature is not corrected promptly after being called to the attention of the attorney or pro se litigant. Correction can be made by signing the paper on file or by submitting a duplicate that contains the signature. A court may require by local rule that papers contain additional identifying information regarding the parties or attorneys, such as telephone numbers to facilitate facsimile transmissions, though, as for omission of a signature, the paper should not be rejected for failure to provide such information.

The sentence in the former rule relating to the effect of answers under oath is no longer needed and has been eliminated. The provision in the former rule that signing a paper constitutes a certificate that it has been read by the signer also has been eliminated as unnecessary. The obligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper be read before it is filed or submitted to the court. Subdivisions (b) and (c).

These subdivisions restate the provisions requiring attorneys and pro se litigants to conduct a reasonable inquiry into the law and facts before signing pleadings, written motions, and other documents, and prescribing sanctions for violation of these obligations. The revision in part expands the responsibilities of litigants to the court, while providing greater constraints and flexibility in dealing with infractions of the rule. The rule continues to require litigants to "stop-and-think" before initially making legal or factual contentions.

**It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention. _The rule applies only to assertions contained in papers filed with or submitted to the court._**

It does not cover matters arising for the first time during oral presentations to the court, when counsel may make statements that would not have been made if there had been more time

for study and reflection. However, a litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.

For example, an attorney who during a pretrial conference insists on a claim or defense should be viewed as "presenting to the court" that contention and would be subject to the obligations of subdivision (b) measured as of that time. Similarly, if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as "presenting"—and hence certifying to the district court under Rule 11—those allegations. The certification with respect to allegations and other factual contentions is revised in recognition that sometimes a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation.

**Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification.**

Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.

**The certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact. That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position.**

On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient "evidentiary support" for purposes of Rule 11. Denials of factual contentions involve somewhat different considerations. Often, of course, a denial is premised upon the existence of evidence contradicting the alleged fact. At other times a denial is permissible because, after an appropriate investigation, a party has no information concerning the matter or, indeed, has a reasonable basis for doubting the credibility of the only evidence relevant to the matter.

A party should not deny an allegation it knows to be true; but it is not required, simply because it lacks contradictory evidence, to admit an allegation that it believes is not true. The changes in subdivisions (b)(3) and (b)(4) will serve to equalize the burden of the rule upon plaintiffs and defendants, who under Rule 8 (b) are in effect allowed to deny allegations by stating that from their initial investigation they lack sufficient information to form a belief as to the truth of the allegation.

If, after further investigation or discovery, a denial is no longer warranted, the defendant should not continue to insist on that denial. While sometimes helpful, formal amendment of the pleadings to withdraw an allegation or denial is not required by subdivision (b). Arguments for extensions, modifications, or reversals of existing law or for creation of new law do not violate subdivision (b)(2) provided they are "nonfrivolous." This establishes an objective standard, intended to eliminate any "empty-head pure-heart" justification for patently frivolous arguments.

However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated. Although arguments for a change of law are not required to be specifically so

identified, a contention that is so identified should be viewed with greater tolerance under the rule.

**The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities (or, in the case of government attorneys, to the Attorney General, Inspector General, or agency head), etc. See Manual for Complex Litigation, Second, § 42.3.**

The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons. Subdivision (d). Rules 26 (g) and 37 establish certification standards and sanctions that apply to discovery disclosures, requests, responses, objections, and motions. It is appropriate that Rules 26 through 37, which are specially designed for the discovery process, govern such documents and conduct rather than the more general provisions

15

of Rule <u>11</u>. Subdivision (d) has been added to accomplish this result. Rule <u>11</u> is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under <u>28</u> U.S.C. § <u>1927</u>.

**See Chambers v. NASCO, XX U.S. XX (1991).** Chambers cautions, however, against reliance upon inherent powers if appropriate sanctions can be imposed under provisions such as **Rule <u>11</u>, and the procedures specified in Rule <u>11</u>**—notice, opportunity to respond, and findings—should ordinarily be employed when imposing a sanction under the court's inherent powers. Finally, it should be noted that Rule <u>11</u> does not preclude a party from initiating an independent action for malicious prosecution or abuse of process. 9Committee Notes on Rules—2007 Amendment The language of Rule <u>11</u> has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. Providing an e-mail address is useful, but does not of itself signify consent to filing or service by e-mail. Plaintiff would settle the case

## Conclusion of plaintiff's motion

Plaintiff looking in a direction differently from the bank seeing defendant Shilling-perusing plaintiff from behind before plaintiff arrived at the light facing the bank which is an undefeatable fact where the defendant shall fail, given plaintiff an opportunity to get the defendant on the stand at pretrial or trial Defendant Shilling shall be defeated. Plaintiff points to the conflicts of statements in the wholly brand new police against the plaintiff discovery in the under line case in which plaintiff has never seen the brand new discovery in the underline case now at issue before the court. Plaintiff again asseverates to the court defendant was not at the bank as he claimed he was under God's Law and this divine court.

**WHEREFORE** plaintiff asked this great court to consider with it power to deny defendants motion for summary judgement based off the Totality of facts of this case and the fact defendant shilling evaded service in the early stages of this case illustrating conduct and concealment of crimes Miranda vs. Arizona. All other equitable remedies and decisions which

the court to impose and set is just or what ever the court should decide to be just, further progress of all parties bring them to pretrial or trial herein.

**At the mouth of two or more witnesses shall the matter be established Deut. 19:15.**

_Linda Rinehart_

_Jean Kirk_

**Craig Kirk**

## CERTIFICATE OF SERVICE

The under signed Craig Kirk, do hereby certify that I did deliver a true and correct copy of the forgoing document ***PLAINTIFFS OPPOSITION AND OBJECTION TO DEFEDANTS SHILLING'S POLICE REPORT AND MOTION FOR SUMMARY JUDGEMENT*** 02/07/2011 A.D. depositing a copy thereof in the United States Mail Postage prepaid, in an envelope address to: **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO EASTERN DIVISION** to sent to all defendants by pacer and to all defendants Muskingum county et al through and by their council by email from craigslaw@frontier.com.

Respectfully Submitted

Phone 740 824-4850
PO. BOX 206 Warsaw Ohio [43844]
E-mail craigslaw@frontier.com

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Craig Michael, Kirk

        Plaintiff

                                   CASE NO. 2:09CV583

Vs.

                                   Judge James L. Graham
                                   Magistrate Elisabeth Preston Deavers

Muskingum County Ohio et al.

        Defendants

## United States District Court Southern District Clerk of Court

Please find;

    Craig Michael Kirks pleading identified as **PLAINTIFFS OPPOSITION AND OBJECTION TO DEFEDANTS SHILLING'S POLICE REPORT AND MOTION FOR SUMMARY JUDGEMENT** on or about 02/07/2011 A.D. sent and mailed CASE NO. 2:09CV583. to said clerk plaintiff so orders the United States District Court Southern District of Ohio Eastern Division clerk of court to file said court papers and that it be timely herein.

                                   Respectfully Submitted

                                   Phone 740 824-4850
                            PO. BOX 206 Warsaw Ohio [43844]
                             E-mail craigslaw@frontier.com

2-8-2011 AD

## ASSEVERATION & DECLERATION

Craig Kirk

I Craig Michael Kirk bind his mind body and soul under pains and penalties hereby so asseverates and declares to the court that I'm of sound mind body over the age of 18 living in Warsaw, Ohio County of Coshocton  for at least 5 years in the United States Of America.  Craig Kirk Plaintiff So states as to the truth that on the night in question in the underline case traffic stop case the plaintiff in the 440 federal case state at all times Defendant Shilling was not at the bank at the exact time in which he so states in his motion for summary judgement.

Plaintiff also states that the brand new police report which plaintiff has never seen before issued in  discovery in the underline case before in form or substance object to the it now as truth and fact.

Craig Kirk

PLAINTIFF'S
EXHIBIT
1

# D. SCOTT RANKIN

## Attorney at Law

Telephone: (740) 452-5403
Fax:        (740) 452-8473

45 N. Fourth Street
Zanesville, Ohio 43701

October 1, 2007

Craig M. Kirk
1239 Chestnut Street Lot B
Coshocton, Ohio   43812

**RE:  VILLAGE OF FRAZEYSBURG v. CRAIG M. KIRK**
      **Case Number:  TRC 0705102**

Dear Mr. Kirk:

Attached you will find a witness list setting forth all critical witnesses which Village of Frazeysburg is aware of and which the Village intends to use at trial.

Furthermore, you are hereby granted privilege to inspect and copy any and all evidence being held by the Village at this time by making arrangements through the office of D. Scott Rankin.

By accepting this early discovery, you are hereby triggering the Village's reciprocal right to have all discoverable evidence, which you intend to use at trial.  Also, please find enclosed our reciprocal Request For Discovery, which we have filed with the court.

Respectfully,

*D. Scott R*

D. Scott Rankin

DSR/nls
Attachments - as stated

October 1, 2007
Craig M. Kirk
Page Two



**Re:**   <u>**VILLAGE OF FRAZEYSBURG v. CRAIG M. KIRK**</u>
         **Case Number:  TRC 0705102**

**WITNESSES**

| | |
|---|---|
| 1. Officer Jason Schilling | Frazeysburg Police |
| 2. Trooper Roe | Ohio State Highway Patrol |
| 3. Scott Caldwell | Dresden Police - Unit 2 |
| 4. Chief Clifford Bigler | Frazeysburg Police |

**ATTACHMENTS**

1. Summons
2. Village of Frazeysburg Transfer To Muskingum County Court Form
3. BMV 2255
4. Copy of Citation
5. Copy of Police Report

ORI NUMBER   OH0600400          P.T. NUMBER   07-003-3-09          IR DATE ...09/01/2007 03:30:00          PAGE NO



### FRAZEYSBURG POLICE DEPARTMENT

### OHIO UNIFORM INCIDENT REPORT



**PLAINTIFF'S EXHIBIT**
2

NARRATIVE:
Saturday, September 1, 2007 at 12:26 a.m.



Officer Jason Schilling Unit #5 was conducting stationary patrol in the Huntington Bank Parking Lot located at the intersection of 3rd Street and State Street. I observed a silver Ford Escort Station Wagon traveling northbound on South State Street. The vehicle completed a right turn and drove eastbound on 3rd Street. I observed that the driver did not signal when turning and the vehicle only had one operational headlight on the driver side.

I drove out of the Huntington Bank Parking Lot and traveled eastbound on 3rd Street. The suspect vehicle sped up as I approached and failed to stop when I activated my overhead beacons and turned on my audible siren on my marked patrol vehicle.

The vehicle suddenly slowed and quickly drove off the roadway, onto the south side of the roadway, still facing eastbound.

I contacted the Muskingum County Sheriff's Department Dispatcher and advised of the traffic stop, vehicle information (Ohio Plate: BN19TX) and advised of my location, East 3rd Street and west of Williamsburg Square Skiles.

I exited my patrol vehicle (#102) and approached the driver side window of the vehicle. I observed a male driver as the sole occupant. As I approached the vehicle, I also smelled a strong odor of an unknown alcoholic beverage emitting from the open driver side window.

I made contact with the driver, who identified himself a Craig M. Kirk from Coshocton, Ohio. I asked for his driver's license, insurance information and vehicle registration. Kirk said, "Well that is going to be hard for me to do." He looked at me and then looked away. I smelled a strong odor of an unknown alcoholic beverage on his breath. His eyes were glassy and his pupils were fully dilated. He could not maintain eye contact with me and he kept failing to his right shoulder. I asked why he did not have the license on him. He said, "Well that is a long story, you see I am an ex-patriot, and I do not believe in government or any type of identification." I asked for his name, Social Security Number and date of birth. He provided his name and date of birth, but refused to provide his Social Security Number.

I advised Kirk that I stopped his vehicle because he did not signal when turning onto east 3rd Street and his passenger side headlight is not working. He said, "I don't believe that. I bet this is because of me being a Green's house." I asked where Green's house is, he said, "You know, Jean Green, he only lives a few doors down from the Police Department, he is a trouble maker and doesn't believe in government either." I assured him I did not stop him for that reason. Kirk said, "Well it is probably because I am Jewish." I once again assured him it was not for that reason.

I asked Kirk if he consumed any alcohol, illegal substances or other drug before driving. He said no.

I asked him to stay in his vehicle while I checked his driver's license information.

I walked back to my patrol car and made contact with the Muskingum County Sheriff's Department Dispatcher. I was advised by the dispatcher that the Ford Escort is registered to Jeanette Kirk and Craig Kirk's license was under permanent revocation since June, 27, 1994 through Franklin County Municipal Court.

I observed Kirk's actions from my vehicle. I observed him strike the dashboard with his fist, root around inside the vehicle, shake his fists over his head and throw a small unknown object into the rear storage compartment of his vehicle.

I requested assistance through the MCSO dispatcher. Dresden Police Department (Unit 2 / Asst. Chief) advised he was en-route. MCSO Deputy Caldwell also advised he was en-route.

I exited my vehicle and approached the driver side window of the suspect vehicle. I advised Kirk that his license are under suspension permanently. He said, "Yeah, and what else is new, I already knew that." I asked him to submit to a standard field sobriety test. He refused. I explained the consequences for not submitting to the field test. He still refused.

ORI NUMBER:  OHD600400       IR NUMBER   07-00319-09        IR DATE:   09/01/2007 03:30:00        PAGE NO.   5

### FRAZEYSBURG POLICE DEPARTMENT

### OHIO UNIFORM INCIDENT REPORT



PLAINTIFF'S EXHIBIT

2-2

I asked him to step out of the vehicle. He did without incident. I walked him to the rear of his vehicle and advised he was under arrest for suspicion of OVI and Driving Under Suspension. I could smell a strong odor of an unknown alcoholic beverage upon his breath and person. His eyes were glassy, and he stumbled as he walked. I advised him of his Miranda rights and placed him under arrest. Kirk said he has a bad back and neck and cannot wear one set of handcuffs behind his back. I placed both available pairs of handcuffs on his wrists for maximum comfort. He asked if I would place the handcuffs in front of him. I explained that I would, when my back-up arrives. I walked him to the rear passenger side of my cruiser. I again asked if he would submit to a field sobriety test and of the consequences if he does not. He again said no. Kirk stated he was being falsely arrested and I was violating the "Commandments of Moses." I asked him to recite the commandments I was violating. He mumbled and said, "I can only tell you one, the rest are a secret." Kirk said, "I am Jewish, so does that mean you are going to shoot me along the roadside?" I assured him that would not happen. He said, "That is what Hitler did."

Dresden (Unit 2) arrived and parked behind my cruiser. The Dresden officer assisted me with patting down Kirk and placing a third set of handcuffs in a chain along Kirk's stomach. Kirk advised he was more comfortable.

MCSO Deputy Sheriff Caldwell also arrived as we placed the third set of handcuffs on Kirk.

Kirk was placed in the rear passenger side of my patrol car.

Dresden (Unit 2) contacted the MCSO dispatcher and requested a tow truck. I completed an inventory of the vehicle prior to impound. I noted the mileage and VIN number of the vehicle. I also completed an inventory of the entire interior of the vehicle. I observed a large amount of trash inside the vehicle. The driver seat was wet and smelled like urine. The interior of the vehicle also smelled like an unknown alcoholic beverage. I noted a fixed blade knife secured inside a leather sheath lying on the passenger side dashboard. The blade appeared to be five inches or less in length and was not removed from the vehicle.

I completed an inventory of the rear storage compartment of the vehicle. The compartment is not separate and is accessible from the front and rear passenger seats. I noted on the inventory sheet a red plastic tool kit with miscellaneous tools and trash. I discovered a compacted 12 oz. Budweiser beer can near the toolkit.

The can contained a small amount of an unknown yellow liquid that smelled and appeared to be an alcoholic beverage. The can was very cold and moist. The weather conditions during the traffic stop were clear and warm. The contents of the can smelled fresh and the can appeared to have been recently opened and emptied or consumed.

I walked back to my patrol vehicle and spoke with Kirk about the beer can I found in the storage area. I asked if he consumed the contents prior to or while driving. He laughed and said, "Oh, we collect cans to recycle."


1:20 a.m.

JR Towing arrived (Business Address: 10 East 3rd Street Frazeysburg, Ohio 43822.) I advised the tow truck driver, James Smith, that the vehicle is not on-hold, but can only be released to the owner, Jeanette Kirk. The keys were left in the ignition.


1:45 a.m.

I transported Kirk to Ohio State Highway Patrol Post 80 in Zanesville, Ohio. I read Kirk his Miranda, he said he understood. Trooper Roe (362) witnessed the Miranda form. Kirk refused to sign the form.

Trooper Roe setup the Breathalyzer Machine for the breath test. He placed a fresh plastic mouth piece on the blow tube of the machine. The mouth piece was inside a sealed clear plastic baggie prior to being removed.

ORI NUMBER: OH0600400     IR Number: 07-00319-05      IR DATE: 9/01/2007 03:30:00     PAGE NO: 9

## FRAZEYSBURG POLICE DEPARTMENT

## OHIO UNIFORM INCIDENT REPORT

I read the BMV 2255 consequences section on the reverse side of the form to Kirk. Kirk refused to read along with the form. After the form was read to him, he said, "Whatever." Trooper Roe signed the form as a witness.

2:07 a.m.

Trooper Roe requested that Kirk blow into the mouthpiece on the Breathalyzer Machine. Kirk refused and did not place his mouth on or near the tube. He remained seated in front of the machine.

Roe recorded the results as a refusal.

2:35 a.m.

I transported Kirk to the Frazeysburg Police Department for processing. I completed an Influence Report. Kirk was cooperative during the interview. I presented him with a copy of the BMV 2255 form and Breathalyzer Machine Report.

I advised Kirk that he is being charged with OVI, Driving Under Suspension and Failure to Display Two Operable Headlights. He said he understood and signed citation #4813.

I advised him he is scheduled to appear in Frazeysburg Mayor's Court on Tuesday, September 4, 2007 at 6:00 p.m. He said, "There is going to be a problem with that. That is a Jewish holiday. I don't conduct business on holidays." I asked what the name of the holiday is. He said, "It is a Jewish thing, it is a new moon." I advised I am not familiar with that being a holiday. I explained that he would need to contact the court to reschedule, and if he does not appear, a warrant would be issued for his arrest. He said, "I guess I can work something out."

3:45 a.m.

Kirk was released to his wife.

| REPORTING OFFICER: | Schilling, Jason | BADGE NO. 8 | DATE: 09/04/2007 14:18 |

| FOLLOW-UP? | ☑ Y  ☑ N | If yes, follow-up Assignment. | | 09/04/2007 |

**PLAINTIFF'S EXHIBIT**

2-3

tabbies

PLAINTIFF'S
EXHIBIT

3

MARC DANN
ATTORNEY GENERAL
STATE OF OHIO

OHLEG-SE    Person Search    Vehicle Search    Location Search    Contact Us    About OHL

## Record Information

Data Source: BMV                    Owning Agency: DBV
Record Type: Drivers License (Active)    Record Key: C11590710

## Demographics

Alias(es):
Height: 5'09"                       Weight: 250
Hair: BROWN                         Eyes: BROWN
Race:                               Gender: M
Date of Birth: 1/15/1967            Age: 40
Scar/Mark/Tattoos:

## Identifiers

| SSN(s): | FBI Number(s): | BCI Number(s): |
|---------|----------------|----------------|

## Driver's License

Drivers License Authority: OH              Drivers License:
Expires On: 01/25/1999                     Issue Date: 04/10/1991
License Type: SUSPENDED                     License Type Two Prts:
License Class: D                            LicenseRestriction: NONE B
License Endorsement(s):                     Restriction(s):
Comments: CHECK VEHICLE REGISTRATION
Temporary Identification: PESPANEN          Class: T
Issued Date: 08/29/2002                     Expiration Date: 01/15/2007
Status: EXPIRED                             CDLIS:

## Addresses

| | | COLUMBUS | OH | OH | 43224 |
|---|---|---|---|---|---|
| Residence | | | | FRANKLIN | |

## Convictions

| 01 OH IN-STATE | MUNI | NO POINTS | 7/31/2002 | 8/28/2003 | NO DRIVER LICENSE |
|----------------|------|-----------|-----------|-----------|-------------------|